UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

COINLAB, INC., a Delaware Corporation

Plaintiffs,

v.

MT. GOX KK, a Japanese corporation and
TIBANNE KK, a Japanese corporation.

Defendant.

Case No. 2:13-cv-0777

**PLAINTIFF'S ANSWER TO
COUNTERCLAIM**

## INTRODUCTION AND ANSWER TO PREFATORY STATEMENT

The Defendants' counterclaims are based on two factual premises: first that CoinLab's exchange services are unlawful in the territory covered by the parties' Exclusive License Agreement (Exhibit 1 to the Complaint, referred to as "Agreement"), and second that CoinLab owes MtGox over $5 million of funds provided to CoinLab by MtGox customers. Both claims are false.

### 1. *Sale And Exchange Of Bitcoins Is Not An "Unlawful" Business.*

In an effort to avoid their contractual promises to CoinLab, the Defendants allege in their Answer and Counterclaim that it is "unlawful" to provide Bitcoin exchange services in

*PLAINTIFF'S ANSWER TO COUNTERCLAIM*
*Case No. 2:13-cv-00777*
*Page 1 of 25*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1   North America without first registering as a money transmission business in forty-seven

2   states. Answer and Counterclaim, Dkt #18, September 10, 2013 ("Answer") at p. 2. This

3   allegation does not survive even cursory scrutiny. MtGox has taken the opposite position in

4   its actual business operations—to this day MtGox continues to offer Bitcoin exchange

5   services throughout the United States *without having registered as a money transmission*

6   *business in any state.* And, in the very contract MtGox seeks to avoid, it warranted that it

7   has always operated in full compliance with all applicable laws and regulations.

8       CoinLab has never been found by any state or federal regulatory agency or by any

9   court to be in violation of any law or regulation. In their Answer, the Defendants cite March

10  2013 guidance from the federal agency Financial Crimes Enforcement Network ("FinCEN")

11  as an example of a regulation with which CoinLab failed to comply. Answer at ¶ 33. In

12  fact, CoinLab registered with FinCEN long before the March 2013 guidance was issued,

13  and, immediately after the guidance was published, CoinLab filed to update its registration,

14  consistent with the guidance.

15      Before MtGox made the decision to breach its Agreement with CoinLab, it reviewed

16  and approved CoinLab's plans for regulatory compliance. Indeed, CoinLab's general

17  counsel Patrick Murck briefed MtGox's outside regulatory counsel at Baker & McKenzie on

18  CoinLab's regulatory compliance strategy within days of the "Transition Date"—the date on

19  which the Defendants now claim CoinLab breached the contract by failing to satisfy

20  regulatory requirements. MtGox's counsel indicated that CoinLab's strategy was reasonable

21  and consistent with existing law.

22      The Defendants also ignore the jurisdictions, including all of Canada, in which there

23  is no basis whatsoever for their claim of illegality. In May 2013, the Financial Transactions

24  and Reports Analysis Centre of Canada ("FINTRAC") sent a letter to Bitcoin exchanges

25  stating that Canada would not regulate Bitcoin exchanges as a money services business.

26

27

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Bitcoin exchanges are not required to register with FINTRAC in Canada and there is not even a colorable argument that CoinLab's exchange services violate Canadian law. By the same token, a number of U.S. states either have no money transfer business regulations at all or have regulations that are plainly inapplicable to at least certain Bitcoin exchange business models. The Defendants simply ignore these jurisdictions when they argue that Bitcoin exchange in North America is *per se* illegal.

### 2. Regulation Of Bitcoin Exchange Services Is Evolving And Has Not Been Definitively Established.

The sale and exchange of Bitcoin is a newly emerging business. Regulatory authority over these exchanges in various North American jurisdictions has historically been either non-existent or uncertain, and is only now beginning to take a more coherent shape. As MtGox itself notes in a May 30, 2013 statement on its website announcing a change in its own compliance procedures, "[t]he Bitcoin market continues to evolve, as do regulations and conditions for compliance for MtGox to continue bringing secure services to our customers." *See* Exhibit 1 to this Answer to Counterclaim, "Statement Regarding Account Verifications", May 30, 2013, https://www.mtgox.com/press_release_20130530.html.

Indeed, uncertainty remains even regarding which agencies and set of regulations should apply. Currencies such as Bitcoin that are not issued or maintained by any government have some characteristics of money (typically regulated by one set of agencies), some characteristics of commodities (typically regulated by a different set of agencies), and significant differences from both. As recently as August 2013, the State of New York Department of Financial Services issued a formal notice stating that it has "launched an inquiry into the appropriate regulatory guidelines that should be put in place for virtual currencies." Exhibit 2 to this Answer to Counterclaim, Memo re: Notice of Inquiry on Virtual Currencies, August 12, 2013, at p. 1. The same memo also indicates that "virtual

*PLAINTIFF'S ANSWER TO COUNTERCLAIM*
*Case No. 2:13-cv-00777*
*Page 3 of 25*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

currency exchangers may be engaging in money transmission as defined in New York law," but it includes no definitive guidance even on this point and does not elaborate on the particular virtual currency exchange activities that may invoke the statute. *Id.*

Substantial changes have taken place in the regulation of Bitcoin services just in the months since November 2012, when the parties entered into the Agreement. In March 2013 the FinCEN issued guidance stating that certain Bitcoin exchange services would be regulated under federal law as a money transmission business. Prior to the issuance of this guidance, the consensus among regulatory specialists was that Bitcoin exchange providers were likely to be regulated not as money transmitters but as "prepaid access providers" (requiring a different type of federal registration.). In the wake of the March 2013 FinCEN guidance, agencies from some states have also taken the position that certain Bitcoin exchange services constitute money transmission under their state statutes. To date, however, the application of these statutes to Bitcoin services has not been determined by any court.

The Defendants' reliance on a letter from the California Department of Financial Institutions to the Bitcoin Foundation is misplaced. *See* Answer, Exhibit 2. Even accepted at face value, the letter is hardly definitive; it says only that the Bitcoin Foundation "*may* be engaged in the business of money transmission without having obtained the license or proper authorization required by the California Financial Code." *Id.* at p. 1. There are strong reasons to conclude that the money transmission regulations from the California Financial Code do *not* apply to sales of Bitcoin. MtGox is fully aware of these reasons because its CEO, Mark Karpeles, in his role as a board member of the Bitcoin Foundation, authorized the Foundation's law firm Perkins Coie to provide a response to the California letter. *See* letter from J. Dax Hansen to Ms. Tara L. Murphy, July 1, 2013, attached as Exhibit 3 to this Answer to Counterclaim. It explains, in detail, why the money transmission regulations do

*PLAINTIFF'S ANSWER TO COUNTERCLAIM*
*Case No. 2:13-cv-00777*
*Page 4 of 25*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

not apply to an entity in the business of buying and selling Bitcoin to its customers. To date, California has not responded to Perkins Coie's letter.

In addition to the ongoing changes regarding the potentially applicable regulations, Bitcoin service providers such as CoinLab can modify their regulatory exposure by changing the actual services they provide. Different business models for providing Bitcoin services are also subject to different regulatory requirements.

### 3. CoinLab Has Been Engaging And Cooperating With Regulators And Is Fully Prepared To Comply With Any Actual Regulatory Requirements Including MTB Licensing.

CoinLab is actively engaged in the process of discussing and negotiating with state and federal regulators about the regulatory scheme that will govern Bitcoin exchange services. CoinLab's CEO Peter Vessenes has met with leaders in Washington D.C. and in a number of individual states to explore and address these issues. Throughout this process, CoinLab's approach has been to be as open and forthcoming as possible with lawmakers and regulators. As a result, CoinLab has earned a degree of trust in the field that will allow it to continue to play a leading role in helping to craft and implement a Bitcoin regulatory framework.

By contrast, MtGox has apparently avoided contact with regulators, conducted business through secret deals with dubious partners, and has repeatedly had its accounts frozen or seized. In May 2013, the Office of Homeland Security seized accounts MtGox held with the U.S. payment company Dwolla. Apparently MtGox held the accounts under the alias "Mutum Sigillum." *See* Amar Toor, "US Seizes and Freezes Funds at Biggest Bitcoin Exchange", The Verge.com, May 15, 2013, at http://www.theverge.com/2013/5/15/4332698/dwolla-payments-mtgox-halted-by-homeland-security-seizure-warrant), attached as Exhibit 3 to this Answer to Counterclaim. Additional MtGox/"Mutum Sigillum" accounts at Wells Fargo were also seized. Contrary to MtGox's

*PLAINTIFF'S ANSWER TO COUNTERCLAIM*
*Case No. 2:13-cv-00777*
*Page 5 of 25*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

allegations in its Answer, these regulatory actions are not the inevitable result of operating a Bitcoin exchange in the United States, but stem from MtGox's attempts to avoid regulatory scrutiny altogether.

In addition to working openly and cooperatively with regulators, CoinLab has the ability to adjust its business model to avoid running afoul of regulatory requirements that may be established. Under the Agreement, CoinLab was not required to provide the Bitcoin "Services" using any particular model. CoinLab was free to offer customers anything from a simple purchase and sale of Bitcoin to more complete account services such as a virtual wallet for storage of Bitcoin and the ability to transfer Bitcoin to other accounts or to third-parties. Such additional services could substantially increase the regulatory exposure of CoinLab's business, but the Agreement did not require them and the Defendants cannot rely on regulations governing these sorts of additional services to claim that the Agreement is "unlawful."

CoinLab also had contingency plans in place to obtain money transfer business licensing in all necessary states if and when a determination were to be made that such licensing is necessary. As CoinLab explained to MtGox in a memo on regulatory compliance strategy, CoinLab has been conducting negotiations with several other financial institutions that are themselves licensed as money transmitters in all states. CoinLab informed MtGox of this option in April. *See*, Memo re Legal and Regulatory Strategy For CoinLab, April 13, 2013 at p. 2, attached as Exhibit 4 to this Answer and Counterclaim. Through an arrangement with one of these other institutions, CoinLab could conduct business using existing licenses. Such an arrangement is not only lawful but also financially viable and it has always been available to CoinLab if immediate registration as a money transmitter were found to be necessary.

*PLAINTIFF'S ANSWER TO COUNTERCLAIM*
*Case No. 2:13-cv-00777*
*Page 6 of 25*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

### 4. CoinLab's Compliance Efforts Have Been Hindered And Thwarted By MtGox's Breaches.

At the time the Agreement was negotiated, both CoinLab and MtGox were well aware of the evolving nature of the regulatory framework applicable to Bitcoin exchanges. The Parties' Agreement expressly incorporates that understanding. Under the Agreement, CoinLab took responsibility for navigating the U.S. regulatory environment and establishing compliance with any laws determined to govern the Services offered in North America. For CoinLab to achieve compliance, it needed the Defendants' cooperation and, accordingly, the Defendants promised to provide that cooperation in the Agreement. Under Section 2.D. MtGox is required to "cooperate fully with CoinLab in achieving [regulatory] compliance" and to "provide CoinLab with any information or documents necessary for CoinLab to be compliant with all applicable laws and regulations of the Territory." *See* Agreement, attached as Exhibit 1 to the Complaint, at p. 3.

MtGox has utterly failed to satisfy these obligations. Despite repeated requests both before and after the Transition Date, MtGox and Tibanne have consistently refused to provide customer information critical to CoinLab's regulatory efforts. As the Defendants acknowledge, one of the primary goals of regulating financial businesses is the prevention of both money laundering and funding of illegal activity. For that reason, most regulatory regimes include some form of anti-money laundering (AML) and "Know Your Customer" (KYC) requirements. To comply with these regulations, CoinLab must have information about the Defendants' existing customers and about the Defendants' procedures for vetting new customers. MtGox and Tibanne have simply refused to provide this information, despite their clear contractual obligation to do so. As CoinLab stated to MtGox in an April 10, 2013 memo on regulatory compliance:

> CoinLab is unable to fully assess what, if any licenses, it may be required to obtain because it does not have complete customer information from Tibanne. Because Tibanne has not supplied complete data, CoinLab is

*PLAINTIFF'S ANSWER TO COUNTERCLAIM*
*Case No. 2:13-cv-00777*
*Page 7 of 25*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

further unable to assess whether MtGox is currently compliant with State money transmitter law and what measures may need to be taken to bring the MtGox services into compliance with such money transmitter laws.

Memo re Legal and Regulatory Strategy For CoinLab, April 13, 2013 at p. 2, attached as Exhibit 4 to this Answer and Counterclaim. In addition to the failure to provide this customer data, MtGox indicated that it had received offers of assistance with regulatory issues in the United States but refused to forward information about those offers to CoinLab, as MtGox was required to do under the Agreement. It is disingenuous, to say the least, for the Defendants to complain that CoinLab breached the agreement by failing to obtain regulatory approval when the Defendants themselves were refusing to cooperate in the regulatory process.

The Defendants also have failed to fully implement the technological and accounting aspects of the Agreement. Beginning in early March 2013, the parties attempted to implement the Agreement with a few established customers as a test of the necessary systems. The experiment was not a success. Among other problems, MtGox and Tibanne failed to provide timely or complete reconciliation data necessary to balance the accounts between MtGox and CoinLab (data that was also necessary to demonstrate compliance with basic regulatory requirements.) In April, MtGox stopped recognizing credits to the accounts of CoinLab customers entirely. Given this uncooperative and unsuccessful business relationship, CoinLab was wholly justified in any decision it made to avoid incurring substantial regulation-related expenses by, for example, obtaining licenses or entering a relationship with another licensed financial institution.

### 5. *MtGox Has Not Provided Data Necessary To Determine What Funds, If Any, It Is Owed.*

The Defendants allege that CoinLab owes MtGox over $5 million for deposits customers made into CoinLab accounts in exchange for credit with MtGox. These customers all received their correct allocation of credits with MtGox and, therefore, none of

*PLAINTIFF'S ANSWER TO COUNTERCLAIM*
*Case No. 2:13-cv-00777*
*Page 8 of 25*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

these funds are being held on behalf of the customers. Rather, MtGox claims that CoinLab failed to fully reconcile with MtGox after receiving these funds and that CoinLab must transmit the full amount of these deposits to MtGox. This claim misrepresents the facts and ignores the reconciliation procedure provided for in the Agreement—a procedure that MtGox has repeatedly failed to follow.

Under Section 4.D. of the Agreement, the parties were to reconcile intercompany balances at the end of every week, and potentially more frequently if the intercompany balance was greater than $1 million in favor of either side. In the reconciliation, money would flow in both directions—CoinLab would owe MtGox dollars for customer deposits that were converted to MtGox credits, and MtGox would owe CoinLab for customer withdrawals of dollars converted from MtGox credits, as well as for CoinLab's share of MtGox revenues generated from trades and other activity.

In order to perform the reconciliation, CoinLab must have data from MtGox, including information about MtGox credits received by CoinLab depositors and about fees generated on those deposits and subsequent exchanges. CoinLab has complied in good faith with the Agreement by making every possible reconciliation that it could make based on all data it has received from MtGox to date. In fact, CoinLab has made repeated requests to MtGox for more complete reconciliation data and has been ignored or refused. Without the additional data from MtGox, CoinLab has no ability to determine what amounts are due to MtGox, if any.

Even the reconciliation data that CoinLab did receive from MtGox consistently underreported the amounts due to CoinLab under the terms of the Agreement by failing to include all activity in the accounts of CoinLab customers. MtGox's allegation in its counterclaim that it is entitled to the full amount of the customer deposits ignores fees due to CoinLab and any withdrawals these customers made of funds from CoinLab's accounts.

*PLAINTIFF'S ANSWER TO COUNTERCLAIM*
*Case No. 2:13-cv-00777*
*Page 9 of 25*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Given these additional cash flows, if anything were due from CoinLab to MtGox it must be significantly less than the $5 million claimed by the Defendants. Moreover, pursuant to the Agreement, exchange fees due to CoinLab continue to accrue even after the termination of the Agreement. Identifying the precise amount of damages due and from which party to which party will require a full accounting from MtGox, including all of the data necessary to perform a proper reconciliation as called for by the Agreement.

### RESPONSES TO INDIVIDUAL ALLEGATIONS

1. CoinLab admits that Bitcoin was first created in 2009 and that since 2009 over 11 million Bitcoins have been mined. CoinLab also admits that Bitcoin has experienced significantly increased acceptance and use in several countries since 2009. CoinLab denies the remainder of paragraph 1.

2. CoinLab admits that in November 2012, CoinLab, Mt. Gox, and Tibanne entered into an agreement called the "Exclusive License Agreement for the USA and Canada." CoinLab admits that under the Agreement it was to provide certain Bitcoin-exchange-related services to Mt. Gox customers who were located in the United States and Canada. The Agreement speaks for itself. CoinLab denies the remaining allegations in paragraph 2.

3. CoinLab denies the allegations in paragraph 3. a. and the allegations in paragraph 3 d. The remainder of paragraph 3 is a description of the defendants' counter-claims and does not require an admission or denial by CoinLab.

4. CoinLab admits the allegations in paragraph 4.

5. CoinLab denies that its principal place of business is in King County, Washington. CoinLab's principal place of business is in Kitsap County, Washington. CoinLab admits the remaining allegations in paragraph 5.

*PLAINTIFF'S ANSWER TO COUNTERCLAIM*
*Case No. 2:13-cv-00777*
*Page 10 of 25*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

6. CoinLab lacks information necessary to admit or deny the allegations in paragraph 6 and so denies them.

7. CoinLab admits the allegations in paragraph 7.

8. CoinLab admits the allegations in paragraph 8.

9. CoinLab admits the allegations in paragraph 9.

10. CoinLab admits that as of November 22, 2012, it was providing Bitcoin mining services for companies. CoinLab admits that it is presently engaged in the business of incubating Bitcoin companies. CoinLab admits that Peter Vessenes has been CEO of CoinLab at all relevant times. CoinLab denies the remaining allegations in this paragraph.

11. CoinLab denies that it is a founding member of the Bitcoin Foundation. Peter Vessenes is a founding member of the Bitcoin Foundation and CoinLab is a Silver Member. CoinLab admits that the Bitcoin Foundation was formed in 2012 and that its members consist of persons and entities that all work in companies using or promoting Bitcoins. CoinLab admits that the BitCoin Foundation's website states that the purpose of the Bitcoin Foundation is to promote Bitcoins and the wider acceptance of Bitcoins. CoinLab admits that Vessenes has been the chairman of the Bitcoin Foundation since it was formed. CoinLab denies the remaining allegations in this paragraph.

12. CoinLab admits the allegations in paragraph 12.

13. CoinLab admits that the MtGox website was originally used as an exchange for cards used in the game "Magic: The Gathering." CoinLab lacks knowledge sufficient to admit or deny the remaining allegations in paragraph 13 and so denies them.

14. CoinLab admits that the mtgox.com website allows persons who have a MtGox account to engage in purchases and sales of Bitcoins for fiat currency. CoinLab

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

denies the remaining allegations in this paragraph and CoinLab specifically denies that MtGox required its customers to undergo anti-money Laundering verification procedures at all times relevant to this dispute.

15. CoinLab admits the allegations in this paragraph.

16. CoinLab admits the allegations in this paragraph.

17. CoinLab admits that in order to obtain licenses in each of the states requiring licensure of MTB, an applicant would be required to pay a variety of fees upon application and also in most such states to provide monetary security. CoinLab denies the remaining allegations in paragraph 17.

18. The statute cited and associated regulations speak for themselves. CoinLab denies the remaining allegations in this paragraph.

19. CoinLab admits that on March 18, 2013, FinCEN issued interpretive guidance which speaks for itself. CoinLab admits that the California Department of Financial Institutions issued a letter to the Bitcoin Foundation dated May 30, 2013 stating that, " . . .the Bitcoin Foundation may be engaged in the business of money transmission without having obtained a license or proper authorization required by the California Financial code. . ." Coinlab admits that in August 2013, CoinLab received a subpoena from the New York Department of Financial Services, as did virtually every business involved with Bitcoins. CoinLab denies the remaining allegations in paragraph 19.

20. CoinLab admits the allegation in paragraph 20.

21. CoinLab admits that it had discussions with MtGox in approximately May and June 2012 concerning the terms of a proposed agreement between the two companies and that regulatory compliance issues were discussed during these negotiations. CoinLab

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

admits that some of these meetings occurred in Japan and over Skype video conferencing. CoinLab denies the remaining allegations in paragraph 21.

22. CoinLab admits the allegation in paragraph 22.

23. CoinLab admits the allegations in paragraph 23.

24. CoinLab admits that Section 3. B. of the Agreement provides for a Transition Period defined as the 120 day period starting on the November 22, 2012 effective date of the Agreement. CoinLab admits that 120 days from November 22, 2012 is March 22, 2013.

25. CoinLab admits that the contract between the parties speaks for itself. Other than as admitted here, CoinLab denies the allegations in paragraph 25.

26. CoinLab admits that Section 3.B. of the Agreement requires MtGox and CoinLab to "cooperate in transferring the Liquidity Funds (as defined below) to accounts controlled by CoinLab at a time as mutually agreed upon by the Parties but no longer than 120 days from the Effective Date (the "Transition Period.") CoinLab also admits that Section 3.C. of the Agreement requires MtGox to "deposit Bitcoin and other funds (however denominated) of the CoinLab Customers identified on the Effective Date in an account or accounts controlled by CoinLab (the "Liquidity Funds"), with the understanding that all Bitcoin liabilities shall be funded by MtGox solely in Bitcoin." CoinLab denies any allegations in paragraph 26 concerning these contractual provisions other than as admitted in this paragraph.

27. CoinLab admits that persons in numerous countries have accounts with MtGox and use MtGox's Bitcoin exchange services. CoinLab admits that MtGox charges some of these customers fees or commissions. CoinLab admits that Section 4.A. of the Agreement provides for the sharing of revenue derived from fees, commissions or other payments charged to CoinLab Customers in relation to the Services provided

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

pursuant to the Agreement.  CoinLab denies the remaining allegations in this paragraph, and CoinLab specifically denies that the revenue sharing provisions of the contract did not refer to the Transition Period.

28. CoinLab admits that Section 2.D. of the Agreement provides that "CoinLab shall operate the Services in the Territory in compliance with all applicable laws after completion of the Transition Period and MtGox shall cooperate fully with CoinLab in achieving such compliance."  CoinLab admits that Section 6.A.(iv) of the Agreement provides that "The Parties, have to date and will continue throughout the Term to comply with all statutes, codes, ordinances, laws, regulations, rules, orders and decrees of all governmental authorities (including without limitation federal, state, and local governments, governmental agencies and quasi-governmental agencies) having jurisdiction over a Party."   CoinLab denies the remaining allegations in paragraph 28.

29. CoinLab admits the allegations in paragraph 29.

30. CoinLab admits the allegations in paragraph 30.

31. CoinLab denies that MtGox was prepared to implement the agreement as of March 18, 2013.  CoinLab admits that on that date FinCEN issued the FinCEN March 2013 Guidance.

32. CoinLab admits that MtGox sent an email to CoinLab on or about March 20, 2013 that purported to list states in which MtGox customers resided and the approximate percentage of U.S. customers located in each state.  CoinLab lacks information necessary to determine the accuracy of this email and so denies that it was accurate.

33. CoinLab admits that between March 19, 2013 and April 20, 2013, CoinLab and MtGox had several communications related to the FinCEN March 2013 Guidance. CoinLab denies the remaining allegations in this paragraph.  CoinLab had already

*PLAINTIFF'S ANSWER TO COUNTERCLAIM*
*Case No. 2:13-cv-00777*
*Page 14 of 25*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

registered with FinCEN before this guidance was issued. CoinLab applied to modify its registration within days of the issuance of the guidance in order to conform the registration to the guidance by changing CoinLab's business designation from prepaid access to money transmission. CoinLab admits that as of March 22, 2013 it was not licensed in any state as a money transmitter. CoinLab denies the remaining allegations in this paragraph.

34. CoinLab denies the allegations in paragraph 34.

35. CoinLab denies the allegations in paragraph 35.

36. CoinLab admits that it received a purported notice of rescission or termination from MtGox which speaks for itself. CoinLab denies the remaining allegations in this paragraph.

37. CoinLab admits the allegations in paragraph 37.

38. Paragraph 38 refers only to previously stated allegations and does not require an admission or denial.

39. CoinLab admits the allegations in paragraph 39.

40. CoinLab admits that the controversy between CoinLab and MtGox and Tibanne is ripe for decision and is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. CoinLab admits that a judgment determining the rights and obligations of the parties is necessary and appropriate at this time. CoinLab denies the remaining allegations in paragraph 40.

41. Paragraph 40 describes MtGox's request for relief and does not call for an admission or denial by CoinLab, but CoinLab denies that MtGox is entitled to its requested relief.

42. Paragraph 42 refers only to previously stated allegations and does not require an admission or denial.

*PLAINTIFF'S ANSWER TO COUNTERCLAIM*
*Case No. 2:13-cv-00777*
*Page 15 of 25*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

43. Paragraph 43 describes MtGox's counterclaim and does not require an admission or denial.

44. CoinLab denies the allegations in paragraph 44.

45. CoinLab denies the allegations in paragraph 45. In particular CoinLab denies that it has failed to comply with all statutes, code, ordinances, laws, regulations, rules, orders, and decrees of all governmental authorities that would apply to the Bitcoin exchange services that CoinLab was to perform under the Agreement.

46. CoinLab admits that it has received a notice of rescission or termination from MtGox, which speaks for itself. CoinLab denies the remaining allegations in this paragraph.

47. CoinLab denies the allegations in paragraph 47.

48. CoinLab admits that it contends that "the Agreement is valid and should be enforced." Except as expressly admitted, CoinLab denies the remaining allegations in paragraph 48.

49. CoinLab denies the allegations in paragraph 49.

50. Paragraph 50 describes Defendants' request for relief and does not require an admission or a denial, but CoinLab denies that MtGox is entitled to its requested relief.

51. Paragraph 51 refers only to previously stated allegations and does not require an admission or denial.

52. Paragraph 52 describes MtGox's counterclaim and does not require an admission or denial.

53. CoinLab admits that the Agreement states that "CoinLab shall operate the Services in the Territory in compliance with all applicable laws after completion of the Transition Period . . ." CoinLab denies the remaining allegations in this paragraph.

*PLAINTIFF'S ANSWER TO COUNTERCLAIM*
*Case No. 2:13-cv-00777*
*Page 16 of 25*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

54. CoinLab denies the allegations in paragraph 54.

55. CoinLab admits that it has received a purported notice of rescission or termination from MtGox, which speaks for itself. CoinLab denies the remaining allegations in paragraph 55.

56. CoinLab denies the allegations in paragraph 56.

57. CoinLab admits that it contends that "the Agreement is valid and should be enforced." Except as expressly admitted, CoinLab denies the remaining allegations in paragraph 57.

58. CoinLab denies the allegations in paragraph 58.

59. Paragraph 59 describes Defendants' request for relief and does not require an admission or a denial, but CoinLab denies that MtGox is entitled to its requested relief.

60. Paragraph 60 refers only to previously stated allegations and does not require an admission or denial.

61. Paragraph 61 describes MtGox's counterclaim and does not require an admission or denial.

62. CoinLab admits that it had discussions with MtGox in approximately May through September 2012 concerning the laws and regulations relevant to a Bitcoin exchange business. CoinLab admits that on or about November 22, 2012, Mr. Vessenes signed the Agreement, which speaks for itself. CoinLab denies the remaining allegations in paragraph 62.

63. CoinLab denies the allegations in paragraph 63.

64. CoinLab denies the allegations in paragraph 64.

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

65. CoinLab admits that it has received a purported notice of rescission or termination from MtGox, which speaks for itself. CoinLab denies the remaining allegations in paragraph 65.

66. CoinLab denies the allegations of paragraph 66.

67. CoinLab admits that it contends that "the Agreement is valid and should be enforced." Except as expressly admitted, CoinLab denies the remaining allegations in paragraph 67.

68. CoinLab denies the allegations of paragraph 68.

69. Paragraph 69 describes Defendants' request for relief and does not require an admission or a denial, but CoinLab denies that MtGox is entitled to its requested relief.

70. Paragraph 70 refers only to previously stated allegations and does not require an admission or denial.

71. Paragraph 71 describes MtGox's counterclaim and does not require an admission or denial.

72. CoinLab admits that it contends that "the Agreement is valid and should be enforced." Except as expressly admitted, CoinLab denies the remaining allegations in paragraph 72.

73. CoinLab denies the allegations of paragraph 73.

74. Paragraph 74 describes Defendants' request for relief and does not require an admission or a denial, but CoinLab denies that MtGox is entitled to its requested relief.

75. Paragraph 75 refers only to previously stated allegations and does not require an admission or denial.

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

76. Paragraph 76 describes MtGox's counterclaim and does not require an admission or denial.

77. CoinLab admits that it contends that "the Agreement is valid and should be enforced." Except as expressly admitted, CoinLab denies the remaining allegations in paragraph 77.

78. CoinLab denies the allegations in paragraph 78.

79. Paragraph 74 describes Defendants' request for relief and does not require an admission or a denial, but CoinLab denies that MtGox is entitled to its requested relief.

80. Paragraph 80 refers only to previously stated allegations and does not require an admission or denial.

81. Paragraph 81 describes MtGox's counterclaim and does not require an admission or denial.

82. CoinLab admits that beginning in February or March 2013 it contacted certain CoinLab Customers, as that term is defined in the Agreement, and explained that, pursuant to the Agreement, they could deposit funds in a U.S. bank account controlled by CoinLab and receive credits with MtGox in exchange. CoinLab denies the remaining allegations in paragraph 82.

83. CoinLab denies the allegations in paragraph 83.

84. CoinLab admits that it requested that MtGox credit the accounts of certain CoinLab customers who had deposited funds in a bank account controlled by CoinLab in March and April 2013. CoinLab denies the remaining allegations in paragraph 84.

85. CoinLab denies the allegations in paragraph 85.

86. CoinLab denies the allegations in paragraph 86. CoinLab repeatedly requested data that it needed from MtGox, and that MtGox was required to provide pursuant to the

*PLAINTIFF'S ANSWER TO COUNTERCLAIM*
*Case No. 2:13-cv-00777*
*Page 19 of 25*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Agreement, in order to reconcile accounts and determine the amount of a payment due to MtGox, if any. MtGox provided only incomplete data in response to these requests. CoinLab has fully reconciled with MtGox based on all data that it has received to date.

87. CoinLab denies the allegations in paragraph 87. CoinLab made two wire transfers to MtGox, one in the amount of $1,860,553.14 on or about April 1, 2013; and one in the amount of $5,612,977.15 on or about April 25, 2013. The total of these two wire transfers is $7,473,530.29.

88. CoinLab admits that it received a letter from MtGox on or around September 8, 2013 that included a demand for $5,315,210.79. CoinLab also admits that MtGox's Answer and Counterclaim includes a demand for $5,315,210.79. CoinLab denies the remaining allegations in this paragraph.

89. CoinLab denies the allegations in paragraph 88.

90. CoinLab denies the allegations in paragraph 90.

91. CoinLab denies the allegations in paragraph 91.

92. CoinLab denies the allegations in paragraph 92.

93. Paragraph 93 refers only to previously stated allegations and does not require an admission or denial.

94. Paragraph 94 describes MtGox's counterclaim and does not require an admission or denial.

95. CoinLab denies the allegations in paragraph 95.

96. CoinLab denies the allegations in paragraph 96.

97. CoinLab denies the allegations in paragraph 97.

98. Paragraph 98 refers only to previously stated allegations and does not require an admission or denial.

*PLAINTIFF'S ANSWER TO COUNTERCLAIM*
*Case No. 2:13-cv-00777*
*Page 20 of 25*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

99. Paragraph 99 describes MtGox's counterclaim and does not require an admission or denial.

100.     CoinLab denies the allegations in paragraph 100.

101.     CoinLab denies the allegations in paragraph 101.

102.     Paragraph 102 refers only to previously stated allegations and does not require an admission or denial.

103.     Paragraph 103 describes MtGox's counterclaim and does not require an admission or denial.

104.     CoinLab admits that it had discussions with MtGox in approximately May through September 2012 concerning the laws and regulations relevant to a Bitcoin exchange business. CoinLab admits that on or about November 22, 2012, Mr. Vessenes signed the Agreement, which speaks for itself. CoinLab denies the remaining allegations in paragraph 104.

105.     CoinLab denies the allegations of paragraph 105.

106.     CoinLab denies the allegations of paragraph 106.

107.     CoinLab denies the allegations of paragraph 107.

108.     CoinLab denies the allegations of paragraph 108.

109.     CoinLab denies the allegations of paragraph 109.

110.     Paragraph 110 refers only to previously stated allegations and does not require an admission or denial.

111.     Paragraph 111 describes MtGox's counterclaim and does not require an admission or denial.

112.     CoinLab admits that it had discussions with MtGox in approximately May through September 2012 concerning the laws and regulations relevant to a Bitcoin exchange business. CoinLab admits that on or about November 22, 2012, Mr.

*PLAINTIFF'S ANSWER TO COUNTERCLAIM*
*Case No. 2:13-cv-00777*
*Page 21 of 25*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Vessenes signed the Agreement, which speaks for itself. CoinLab denies the remaining allegations in paragraph 112.

113. CoinLab denies the allegations in paragraph 113.

114. CoinLab denies the allegations in paragraph 114.

115. CoinLab denies the allegations in paragraph 115.

116. CoinLab denies the allegations in paragraph 116.

117. Paragraph 117 refers only to previously stated allegations and does not require an admission or denial.

118. Paragraph 118 describes MtGox's counterclaim and does not require an admission or denial.

119. CoinLab admits that it had discussions with MtGox in approximately May through September 2012 concerning the laws and regulations relevant to a Bitcoin exchange business. CoinLab admits that on or about November 22, 2012, Mr. Vessenes signed the Agreement, which speaks for itself. CoinLab denies the remaining allegations in paragraph 119.

120. CoinLab denies the allegations of paragraph 120.

121. CoinLab denies the allegations of paragraph 121.

122. CoinLab denies the allegations of paragraph 122.

123. CoinLab denies the allegations of paragraph 123.

124. CoinLab denies the allegations of paragraph 124.

## FIRST AFFIRMATIVE DEFENSE

### (Material Breach)

125. As an affirmative defense to the Counterclaims, CoinLab alleges that because the Defendants materially breached the contract by failing to provide information related to regulatory compliance, by failing to implement the business aspects of the

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Agreement, by failing to provide necessary accounting data, by failing to maintain promised exclusivity, and by other actions, the Defendants materially breached the agreement.

## SECOND AFFIRMATIVE DEFENSE

### (Excuse of Performance)

126.        As an affirmative defense to the Counterclaims, CoinLab alleges that the Defendant's material breaches of the Agreement excused CoinLab of any obligation to perform pursuant to the Agreement.

## THIRD AFFIRMATIVE DEFENSE

### (Estoppel)

127.        As an affirmative defense, CoinLab alleges that the Defendants' counterclaims are barred by the doctrine of estoppel.  Among other things, the Defendants promised and warranted that they were in compliance with all applicable laws and regulations and that CoinLab relied on such representations and warranties in determining its own regulatory compliance obligations pursuant to the Agreement. In addition, MtGox represented that it could and would perform the business and accounting aspects of the Agreement necessary for CoinLab to achieve regulatory compliance and necessary for CoinLab to perform other obligations under the Agreement, CoinLab relied on these representations in deciding to enter the Agreement and in determining its own regulatory compliance obligations.  As a result of these facts and others, the Defendants are estopped from asserting that CoinLab was not in compliance with applicable laws and regulations and is estopped from asserting a breach of contract on the basis of any such alleged non-compliance.

## FOURTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

128.     As a fourth affirmative defense to the Counterclaims, CoinLab alleges that the Defendants' Counterclaims are barred by the doctrine of unclean hands and/or inequitable conduct.

### FIFTH AFFIRMATIVE DEFENSE

**(Waiver)**

129.     As a fifth affirmative defense to the Counterclaims, CoinLab alleges that the Defendants' Counterclaims are barred by the doctrine of waiver. Among other things, the Defendants' claims that CoinLab failed to comply with regulatory requirements have been waived by the Defendants' breach of their obligation to provide assistance to CoinLab with respect to its efforts at regulatory compliance.

*PLAINTIFF'S ANSWER TO COUNTERCLAIM*
*Case No. 2:13-cv-00777*
*Page 24 of 25*

S U S M A N   G O D F R E Y   L . L . P .
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Dated: October 4, 2013

BRESKIN JOHNSON & TOWNSEND PLLC

By: _/s/Roger M. Townsend_
Roger M. Townsend, WSBA No. 25525
Breskin Johnson & Townsend PLLC
1111 Third Avenue, Suite 2230
Seattle, WA 98101
rtownsend@bjtlegal.com
Phone: (206) 652-8660
Fax: (206) 652-8290

SUSMAN GODFREY LLP
By: _/s/ Lindsey Godfrey Eccles_
Edgar Sargent, WSBA No. 28283
Floyd Short, WSBA No. 21632
Lindsey Godfrey Eccles, WSBA No. 33566
Susman Godfrey LLP
1201 3rd Ave Ste 3800
Seattle, WA 98101-3087
esargent@susmangodfrey.com
fshort@susmangodfrey.com
leccles@susmangodfrey.com
Phone: (206) 516-3895
Fax: (206) 516-3883

Attorneys for Plaintiff CoinLab

*PLAINTIFF'S ANSWER TO COUNTERCLAIM*
*Case No. 2:13-cv-00777*
*Page 25 of 25*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

**CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record who have registered for electronic notifications, and I caused the foregoing to be served upon the following by email:

Dated: October 4, 2013                    By: _/s/ Lindsey Godfrey Eccles_____

*CERTIFICATE OF SERVICE*
*Case No. 2:13-cv-00777*
*Page 1*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

2870142v1/013730