# Exhibit 3



1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
PHONE: 206.359.8000
FAX: 206.359.9000
www.perkinscoie.com

J. Dax Hansen
PHONE: (206) 359-6324
FAX: (206) 359-7324
EMAIL: DHansen@perkinscoie.com

July 1, 2013

**VIA EMAIL**
**VIA FEDERAL EXPRESS**

*Tara.Murphy@dfi.ca.gov*

Ms. Tara L. Murphy
Assistant General Counsel
Department of Financial Institutions
California Business, Transportation and Housing Agency
45 Freemont Street
Suite 1700
San Francisco, CA 94105

Re:  Response of Bitcoin Foundation to May 30, 2013 Warning Letter

Dear Ms. Murphy:

We represent the Bitcoin Foundation and write in response to your office's May 30, 2013 warning letter. Although that letter requested a written response within twenty days, you confirmed via email on June 25, 2013 that you would extend the Bitcoin Foundation's response deadline. This letter constitutes the written response you requested, and explains why the Bitcoin Foundation believes it does not require licensure as a money transmitter under California law. In light of the Foundation's mission to promote bitcoin through public education, the Foundation also details below why it believes the sale of bitcoin is not regulated under the California Money Transmission Act.

I.      **DESCRIPTION OF THE BITCOIN FOUNDATION**

The Bitcoin Foundation is the association dedicated to serving the business, technology, government relations, and public affairs needs of the bitcoin community. The Bitcoin Foundation's members include nearly all of the major companies and other entrepreneurs in the bitcoin industry. The Foundation, a not-for-profit institution, seeks to standardize the use of

LEGAL27120961.5

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DALLAS · DENVER · LOS ANGELES · MADISON · NEW YORK
PALO ALTO · PHOENIX · PORTLAND · SAN DIEGO · SAN FRANCISCO · SEATTLE · SHANGHAI · TAIPEI · WASHINGTON, D.C.

Perkins Coie LLP

Ms. Tara Murphy
Assistant Attorney General
California Department of Financial Institutions
July 1, 2013
Page 2

bitcoin, protect the integrity of the bitcoin protocol, and promote bitcoin through technological investment in bitcoin infrastructure, public education, and initiatives in law and policy.

The Foundation is an advocacy-focused not-for-profit corporation, incorporated in Washington D.C., and operating as a foreign registered corporation out of offices in Seattle, Washington. The Foundation maintains no offices in California, although individual members of the Foundation may be located there. The Foundation accepts donations in bitcoin, and some of those donations may come from California-based Foundation members. The Bitcoin Foundation does not operate a bitcoin exchange and does not sell bitcoin to consumers.

## II. THE BITCOIN FOUNDATION DOES NOT ENGAGE IN MONEY TRANSMISSION IN CALIFORNIA

The California Money Transmission Act prohibits "engag[ing] in the business of money transmission," "or advertis[ing], solicit[ing], or hold[ing] itself out as provid[ing] money transmission in this state" without a license or exemption from licensure.[1] Specifically, California defines money transmission as including any of the following:

1. "selling or issuing payment instruments;"

2. "selling or issuing stored value;" and

3. "receiving money for transmission."[2]

As described below, the Bitcoin Foundation does not engage in any of these regulated activities. Furthermore, even if it did engage in these activities, it does not have any business operations in California that would subject it to the Department of Financial Institution's ("DFI") jurisdiction. These conclusions are borne out by the following discussion, which evaluates the Bitcoin Foundation's operations under each element of California's definition of money transmission.

### A. The Bitcoin Foundation Does Not Maintain Business Operations in California.

As a preliminary matter, under the express wording of the statute, the California Money Transmission Act regulates only "the business of money transmission ... *in this state*" - namely, California.[3] The Bitcoin Foundation does not have business operations in California that would subject it to the DFI's jurisdiction. The Foundation is incorporated in Washington D.C., and

---

[1] Cal. Fin. Code § 2030.
[2] Cal. Fin. Code § 2003(o).
[3] Cal. Fin. Code § 2030 (emphasis added).

Ms. Tara Murphy
Assistant Attorney General
California Department of Financial Institutions
July 1, 2013
Page 3

operates out of offices in Seattle, Washington. The Bitcoin Foundation provides no direct money services to any California consumers. Several Bitcoin Foundation members may themselves operate in California. Some California-based members, from time to time, donate money or bitcoin to the Foundation. However, the receipt of a donation is not money transmission activity and does not otherwise indicate that the Bitcoin Foundation operates in California.

**B.   The Bitcoin Foundation Does Not Sell or Issue Payment Instruments.**

The Bitcoin Foundation is not in the business of selling bitcoin to consumers and does not otherwise operate a bitcoin exchange. Even if it did sell bitcoin to consumers, however, the Foundation believes it would not be regulated as a seller or issuer of payment instruments because a bitcoin is not a payment instrument under California law. In California, a payment instrument is "a check, draft, money order, traveler's check or other instrument for the transmission or payment of money or monetary value, whether or not negotiable."[4] A payment instrument "does not include a credit card voucher, letter of credit, or any instrument that is redeemable by the issuer for goods and services provided by the issuer or its affiliate."[5] "Money" is defined as "a medium of exchange that is authorized or adopted by the United States or a foreign government."[6] "Monetary value" is defined as "a medium of exchange, whether or not redeemable in money."[7] The terms "issue" and "issuer" have different meanings in the payment instrument and stored value contexts. With regard to payment instruments, these terms refer to "the entity that is the maker or drawer of the instrument in accordance with the California Commercial Code and is liable for payment."[8]

The California Commercial Code defines "instrument" as a negotiable instrument,[9] distinguished as either a "note" or "draft," depending on whether it involves a "promise" or an "order."[10] Both

---

[4] Cal. Fin. Code § 2003(q).
[5] Id.
[6] Cal. Fin. Code § 2003(n).
[7] Cal. Fin. Code § 2003(m).
[8] Cal. Fin. Code § 2003(k).
[9] A negotiable instrument means "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it is all of the following: (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder. (2) Is payable on demand or at a definite time. (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor." Cal. Comm. Code. § 3014(a).
[10] Cal. Comm. Code § 3014(e).

Ms. Tara Murphy
Assistant Attorney General
California Department of Financial Institutions
July 1, 2013
Page 4

notes and drafts must involve a written instruction or undertaking.[11] On July 7, 2001, the California Department of Financial Institutions issued a letter regarding "Sale of ATM – Accessible Cards" that interpreted the term "payment instrument":

> [I]t has been our view that the term "other instrument" as used on Section 33059 means a *paper* instrument, like check or draft which is governed by Division 3 ("Division 3") the California Uniform Commercial Code ("UCC") . . . we have taken the view that for purposes of the Payment Instrument Law, an "instrument" is a *written, signed* document that it is similar in nature to a check or a draft, even though not negotiable. We have, therefore, not viewed electronic media, such as stored value cards, as payment instruments.[12]

This confirms that a product can only be an "instrument" if it involves a writing.[13] Bitcoins are not written or signed notes or drafts, and therefore, are not payment instruments regulated by the California Money Transmitter Act.

Even if bitcoins are classified as "instruments," there exists no "issuer" of bitcoins under California law because no entity acts as the "maker or drawer" of bitcoins, and no entity is fundamentally liable for payment. The term "maker" means "a person who signs or is identified in a note as a person undertaking to pay."[14] A "drawer" is "a person who signs or is identified in a draft as a person ordering payment."[15] No single entity in the bitcoin ecosystem can be identified as an entity undertaking to pay a fixed sum of real currency for particular bitcoins. Thus, there is no issuer of bitcoin that would be subject to licensure as a money transmitter under California law.

Finally, even if the Bitcoin Foundation was in the business of selling bitcoin to consumers (which, as explained above, it is not), it would not be regulated as a seller of payment instruments because, for the reasons stated above, bitcoin is not a payment instrument. As a result, selling bitcoin to consumers in California is not an activity governed under the payment instrument prong of the Money Transmitter Act.

---

[11] Cal. Comm. Code § 3103(a)(6) (for a draft, an "order" means "a written instruction to pay money signed by the person giving the instruction"); Cal. Comm. Code § 3103(a)(9) (for a note, a "promise" means "a written undertaking to pay money signed by the person undertaking to pay").
[12] California DFI precedent letter ruling - 01-04 Sale of Stored Value Cards in California is Not Subject to the Payment Instruments Law (July 7, 2001) (emphasis added).
[13] See *Id.*
[14] Cal. Comm. Code § 3103(a)(5).
[15] Cal. Comm. Code § 3103(a)(3).

**C.     The Bitcoin Foundation Does Not Sell or Issue Stored Value.**

Stored value is "monetary value representing a claim against the issuer that is stored on an electronic or digital medium and evidenced by an electronic or digital record, and that is intended and accepted for use as a means of redemption for money or monetary value or payment for goods and services."[16] As noted above, the term "monetary value" is defined as "a medium of exchange, whether or not redeemable in money."[17] Stored value does not refer to "a credit card voucher, letter of credit, or any stored value that is only redeemable by the issuer for goods or services provided by the issuer or its affiliate, except to the extent required by applicable law to be redeemable in cash for its cash value."[18] With regard to stored value, "issue" or "issuer" refers to "the entity that is liable to the holder of stored value and has undertaken or is obligated to pay the stored value."[19]

Bitcoin might be described as a "medium of exchange, whether or not redeemable in money," and therefore be considered monetary value, but that monetary value is not fixed – it varies with the determinations of the market. Furthermore, bitcoin never represents a claim against an issuer, because there is no issuer of bitcoin. Specifically, no issuer of bitcoin exists because no entity, including the Bitcoin Foundation, is liable to a holder of bitcoin or has undertaken or is obligated to pay a fixed real currency value of bitcoin. Bitcoin is therefore not stored value as that term is defined under California law. As a result, no entity, including the Bitcoin Foundation (assuming it had business operations in California that would subject it to the DFI's jurisdiction, which, as explained above, it does not) will be subject to regulation as a seller or issuer of stored value with relation to bitcoin because bitcoin is not stored value.

**D.     The Bitcoin Foundation Does Not Receive Money for Transmission.**

The California Money Transmitter Act also requires licensure for entities engaged in the business of "receiving money for transmission." That term encompasses "receiving money or monetary value in the United States for transmission within or outside the United States by electronic or other means."[20] The sale of a bitcoin or other transactions that involve the receipt of money and the transmission of monetary value do not fit this definition of money transmission. The Bitcoin Foundation is not in the business of selling bitcoin to California consumers, but even if it was, such sales would not require licensure because under the statute, a transaction in which money is received and monetary value is transmitted is not regulated.

---

[16] Cal. Fin. Code § 2003(v).
[17] Cal. Fin. Code § 2003(m).
[18] *Id.*
[19] Cal. Fin. Code § 2003(k).
[20] Cal. Fin. Code § 2003(s).

Ms. Tara Murphy
Assistant Attorney General
California Department of Financial Institutions
July 1, 2013
Page 6

California law defines money transmission as "receiving money or monetary value...for transmission." The plain language of this provision indicates that money transmission occurs when money is received and transmitted or when monetary value is received and transmitted. In other words, the statute, on its face, requires parity of currency on either side of the transaction - money received and transmitted or monetary value received and transmitted. This is likely because the other provisions of the Money Transmitter Act are designed to capture such transactions - namely, the receipt of money in exchange for the issuance or sale of a payment instrument or stored value. The fact that bitcoin does not fit within the definition of payment instruments or stored value does not mean it is automatically regulated by the money transmission prong. Absent parity, as described above, on both sides of the transmission, a transaction is not regulated by this prong of the statute.

This conclusion is confirmed by the DFI's December 6, 2011 opinion letter entitled "Foreign Currency Exchange Services - Not Subject to money Transmission Act."[21] In that opinion, the DFI determined that the receipt of dollars and the delivery of pesos for a fee did not constitute money transmission. The company did not hold customer funds for future transmission and was not financially liable to the consumer. Under these facts, the DFI determined that the company was not subject to the Money Transmitter Act. The sale of a bitcoin functions the same way: legal tender is received and bitcoin is delivered. Further, the customer's legal tender is not held for future transmission, it is merely tendered to the seller, and upon delivery of bitcoin, the seller is not financially liable to the purchaser. The same rationale that applied to the sale of a peso should prevail under the California statute with regard to the sale of a bitcoin.

### III. CONCLUSION

For the foregoing reasons, the Bitcoin Foundation has concluded that it does not engage in activities for which a California money transmitter license is required. Furthermore, the Bitcoin Foundation respectfully submits that the sale of bitcoin is not a regulated activity generally speaking. The Bitcoin Foundation therefore respectfully requests that your office issue an official opinion or administrative letter ruling confirming that the Bitcoin Foundation is not required to obtain a license for the reasons explained above and affirming that the May 30, 2013 warning letter has been withdrawn. Further, the Bitcoin Foundation requests that your office issue an opinion that, for the reasons explained above, the sale of a bitcoin is not regulated under the California Money Transmitter Act.

We appreciate that your office has indicated a willingness to engage in a dialogue regarding the application of California law to the Bitcoin Foundation. We would be happy to discuss this

---

[21] *Available at* http://www.dfi.ca.gov/Laws/orders_files/Opinion-Foreign_Currency_Exchange_Services.pdf.

Ms. Tara Murphy
Assistant Attorney General
California Department of Financial Institutions
July 1, 2013
Page 7

matter with you to provide more information regarding our analysis if you feel it is warranted. The Bitcoin Foundation would also be happy to continue to dialogue with your office regarding the relationship between California law, bitcoin and companies in the bitcoin industry generally. It is important, and a core aspect of the Foundation's mission, to ensure that State regulators understand the bitcoin industry, and that the bitcoin industry participants receive clarity regarding and achieve understanding of their obligations under state law. If you have any questions or comments, please do not hesitate to contact us.

Respectfully,

J. Dax Hansen

JDH

cc: Patrick Murck, Bitcoin Foundation
Joseph P. Cutler, Perkins Coie, LLP