1                                                 Honorable Marsha J. Pechman

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

                WESTERN DISTRICT OF WASHINGTON

9                          AT SEATTLE

10 COINLAB INC., a Delaware Corporation,

11             Plaintiff,         |    Case No. 2:13-cv-777-MJP

12       v.                   |    OPPOSITION TO MOTION FOR

                                       |    TEMPORARY RESTRAINING ORDER

13 MT. GOX KK, a Japanese corporation, and

TIBANNE KK, a Japanese corporation,

14            Defendant.

15

16

17      Defendant Tibanne KK ("Tibanne"), by and through its attorneys, respectfully submits

18 this Opposition to Plaintiff CoinLab, Inc.'s ("CoinLab") Motion for Temporary Restraining

19 Order (the "Motion").

20                           **I.  INTRODUCTION**

21      Tibanne apologizes again for not obtaining counsel within 30 days as required by the

22 Court's April 30, 2014 Minute Order (Docket No. 61).  As explained in more detail below, after

23 several months of litigating this matter, the exchange operated by Defendant Mt. Gox KK

24 ("Mt. Gox") was hacked, leading to the suspension of its operations and bankruptcy.  Shortly

25 thereafter, Tibanne's counsel withdrew from this action.  And, without the benefit of counsel,

26

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER -1
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

1    Tibanne mistakenly believed that the Order staying the entire action (Docket No. 62) included a

2    stay of its obligation to obtain new counsel.

3         Tibanne began looking for counsel as soon as CoinLab filed its Motion for Relief From

4    Stay and Temporary Restraining Order, which was granted on July 22, 2014 (the "TRO").

5    Despite its financial difficulties, Tibanne obtained new counsel in this action on Friday,

6    August 8, 2014, who filed an appearance on the following Monday, August 11, 2014.

7    Additionally, on August 19, 2014, Tibanne provided CoinLab's counsel with the domain and

8    website list required by the TRO.  Thus, since July 21, 2014, Tibanne has acted quickly to obtain

9    counsel and comply with the Court's orders, and there are no continuing violations.

10        Despite the foregoing, CoinLab continues to request that the Court extend the TRO and

11   essentially freeze all of Tibanne's assets.   The sole justification for this is CoinLab's

12   (unsupported) assertion that, without the asset freeze order, it may not be able to satisfy a

13   judgment if it prevails in this breach of contract action.  Yet, the Ninth Circuit has specifically

14   held that a plaintiff in CoinLab's position does not have a right to restrain a defendant's use of its

15   property, much less impose on the Court to supervise its business activities.  It is perhaps for this

16   reason that the Motion makes no effort to identify or satisfy the standard for granting a TRO.

17        Moreover, CoinLab's true intent was revealed at the last hearing when its counsel said it

18   would like to see Tibanne driven into bankruptcy.[1]  In other words, the requested TRO is nothing

19   more than a strong-arm tactic.  If Tibanne is not able to sell domain names, an ordinary part of its

20   business, then it will not have the money needed to defend this action.  And that is exactly what

21   CoinLab wants.

22        Based on the foregoing, as explained in detail below, the Motion should be denied in its

23   entirety.  Alternatively, for the reasons shown below, Tibanne requests that the Court grant it

24   relief from the TRO, and from any extension thereof, to permit it to sell domain names in order

25   _____

[1] This statement is based on counsel's recollection of the hearing because the transcript was not available at the time
26   of filing.

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER -2
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101

SEADOCS:467938.1

1    to generate funds to pay ongoing business expenses incurred by Tibanne, including, without

2    limitation, legal fees and expenses.

3                    **II.   FACTS AND PROCEDURAL BACKGROUND**

4            This is an action for breach of contract and related relief against Mt. Gox and Tibanne.

5    Tibanne is only a bit player in this drama, as CoinLab's own First Amended Complaint (the

6    "FAC") makes clear.   Specifically, the FAC does not mention Tibanne in any substantive

7    capacity, instead referring to it only in identifying the parties and jurisdiction.   (*See* Docket

8    No. 29.)   Likewise, the contract at issue, Exhibit A to the FAC, identifies Mt. Gox and CoinLab

9    as the "Parties."   (*Id.*, Ex. A, p. 1.)   Thus, while Tibanne signed the contract, the real dispute here

10   is between Mt. Gox and CoinLab.

11           From August 2013 through early 2014, Mt. Gox and Tibanne, represented by the same

12   counsel, vigorously defended this action.   Moreover, they both pursued counterclaims, including

13   specifically a request for a declaration that the contract at issue is illegal and, therefore, void.

14   However, in February 2014, the exchange operated by Mt. Gox was hacked, resulting in the

15   suspension of its operations.   (*See* Declaration of Mark Karpeles (the "Karpeles Dec."), a copy of

16   which is attached hereto as Exhibit 1, at ¶ 2.)   On February 28, 2014, Mt. Gox filed for

17   bankruptcy protection in Japan (the "Japanese Bankruptcy") and, shortly thereafter, sought

18   recognition of the same in the United States Bankruptcy Court for the Northern District of Texas

19   (the "Texas Bankruptcy").   (*Id.*)   Later, the Court in the Texas Bankruptcy issued an Order

20   recognizing the Japanese Bankruptcy as a foreign main proceeding.   (*See* Docket No. 70-1.)

21           On March 18, 2014, Mt. Gox filed a Notice of Bankruptcy Filing and Related Stay in this

22   action.   (*See* Docket Nos. 36, 37.)   Two days later, Mt. Gox filed a Motion to Stay Entire Action

23   (the "Motion to Stay").   (*See* Docket Nos. 41, 42.)   The same day, Tibanne filed a Notice of

24   Joinder joining in the Motion to Stay.   (*See* Docket No. 43.)   Also on the same day, Tibanne and

25   Mt. Gox's counsel filed a Motion to Withdraw as Attorney for Tibanne.   (*See* Docket Nos. 39,

26

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER -3
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:467938.1

1    40.)  The Court granted Tibanne's counsel leave to withdraw on April 8, 2014.  (*See* Docket

2    No. 57.)  At that time, the Motion to Stay was still under consideration.

3          On April 30, 2014, the Court entered a Minute Order stating, among other things, that

4    "Defendant Tibanne must obtain an attorney admitted to practice in this District within 30 days

5    from the entry of this order or face sanctions."  (*See* Docket No. 61.)  On the same date, the

6    Court granted Mt. Gox and Tibanne's Motion to Stay and struck Plaintiff's pending motion to

7    compel.  (*See* Docket No. 62.)  At the time these two Orders were entered, Tibanne was not

8    represented by counsel.  (Ex. 1, ¶ 3.)

9          Without the guidance of counsel, Tibanne believed that the Order granting the stay of the

10   entire action (Docket No. 62) included a stay of the 30-day deadline for Tibanne to obtain new

11   counsel in the Minute Order (Docket No. 61).  (Ex. 1, ¶ 4.)  Consistent with this understanding,

12   nothing happened when the 30th day after the Minute Order came and went (May 1, 2014).  And,

13   nothing continued to happen until July 21, 2014, when CoinLab moved to lift the stay in order to

14   enter the TRO and sought a default against Tibanne.  (*See* Docket Nos. 64, 65, 66.)

15         In the meantime, between April 30, 2014 and July 21, 2014, Tibanne was struggling to

16   remain afloat.  (Ex. 1, ¶ 5.)  Since its founding in 2009, Tibanne specialized in web hosting,

17   application development and system management.  (*Id.*, ¶ 7.) In general, Tibanne develops

18   automated systems to make processes that are more responsive to its customers' needs.  (*Id.*)  In

19   this capacity, its largest customer was Mt. Gox, but it also had (and still has) several other

20   customers.  (*Id.*)  Tibanne also capitalized on its specialized knowledge to generate revenues by

21   purchasing and selling internet domain names.  (*Id.*)

22         When Mt. Gox suspended operations, Tibanne's income was substantially reduced.  (*Id.*,

23   ¶ 5.)  Mt. Gox was Tibanne's largest customer and, without its monthly revenues, Tibanne was

24   unable to meet its monthly expenditures.  (*Id.*)  Accordingly, Tibanne looked for ways to

25   generate money to fund its ongoing business expenses – as well as legal expenses in connection

26   with actions pending in the United States and Canada, accusing Tibanne and others of

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER -4
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:467938.1

1    wrongdoing in connection with the hacking and suspension of the operations of Mt. Gox.[2]  (*Id.*,

2    ¶¶ 5-6.)

3        As noted, part of Tibanne's business has always been acquiring and selling domain

4    names.  (*Id.*, ¶ 7.)  One of the, if not the, most valuable domains held by Tibanne is bitcoins.com,

5    which Tibanne purchased in 2011.  (*Id.*)  In fact, also in 2011, Tibanne obtained the trademarks

6    on "Bitcoin" and several related terms in order to keep the use of the words free, and to prevent

7    anyone from trying to limit their use or make a profit off of others' work.  (*Id.*, ¶ 8.)  Since

8    registering those trademarks, Tibanne has publicly announced that it would allow them to be

9    used freely throughout the world.  (*Id.*)  To this day, Tibanne has never sought to prevent the use

10   of, or obtain a royalty for the use of, "bitcoin" or related marks.  (*Id.*)

11       On May 28, 2014, Tibanne announced that it would auction off "bitcoins.com."  (*Id.*,

12   ¶ 9.)  This announcement garnered international media attention, including articles in the Wall

13   Street Journal, the Telegraph and on general news websites.  (*Id.*, ¶ 9; *see also id.*, Exs. A-C.)

14   Indeed, in its motion seeking the TRO, CoinLab admitted that Tibanne "publicly announced" its

15   intent to sell bitcoins.com and that Tibanne announced it was doing so "to keep alive" Tibanne.

16   (*See* Docket No. 65, p. 3.)

17       In deciding to sell "bitcoins.com," Tibanne worked with the trustee in the Japanese

18   Bankruptcy (the "Mt. Gox Trustee").  (Ex. 1, ¶ 10.)  Moreover, Tibanne has continued to work

19   with the Mt. Gox Trustee for the benefit of Mt. Gox and its creditors.  (*Id.*)  In fact, Tibanne has

20   agreed to, and does, provide the Mt. Gox Trustee with monthly financial reporting of Tibanne's

21   operations.  (*Id.*)

22       The sale of bitcoins.com was scheduled to occur on July 24, 2014 – nearly two months

23   after the sale was originally announced.  (*Id.*, ¶ 11.)  Despite this, just three days before the

24   auction, on July 21, CoinLab filed a motion with this Court accusing Tibanne of a grand plan to

25

26   [2] Tibanne denies all such allegations.  (*Id.*, ¶ 6.)

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER -5
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:467938.1

1    liquidate its assets and become judgment-proof.   Based on these representations, the Court

2    entered the TRO on July 22.   Based on the TRO, the auction house that was conducting the sale

3    of bitcoins.com refused to conduct the auction.   (*Id.*)   This, in turn, left Tibanne with essentially

4    no money.   (*Id.*)   And, on the same day as it moved to block the sale, it also moved to hold

5    Tibanne in default.   Based on the foregoing, CoinLab strategically waited until the eve of the sale

6    to:   (a) cripple Tibanne's ability to raise money; and (b) simultaneously put it under threat of

7    default if it did not hire new attorneys.

8         When CoinLab filed its motions, Tibanne believed that its deadline to obtain new counsel

9    in this District had been stayed.   (Ex. 1, ¶¶ 4, 12.)   Nevertheless, it immediately tried to obtain

10   counsel in this District to represent it in this action.   (*Id.* ¶ 12.)   These efforts were delayed by the

11   TRO itself.   Specifically, Tibanne found itself without the money it needed to hire lawyers to

12   secure the relief from the TRO it needed to sell bitcoins.com to raise money.   (*Id.*)

13        Then, on August 5, 2014, the Court ordered that Tibanne appear and show cause why it

14   should not be sanctioned for not hiring replacement counsel in this District.   Finally, on

15   August 8, 2014, Tibanne was able to retain counsel.   (*Id.*)   And, at the show cause hearing, the

16   Court declined to enter sanctions.

17        At this point, however, Tibanne has essentially run out of money.   (*Id.*, ¶ 13.)   It does not

18   have sufficient cash to pay its ordinary operating expenses or to continue to employ legal counsel

19   to defend it in this and other pending actions.   (*Id.*)   But, if Tibanne is permitted to sell domains –

20   including bitcoins.com – it will be able to raise the money needed to keep the lights on, including

21   defending this action.   (*Id.*, ¶ 14.)

22                          **III.   ARGUMENT**

23        This argument is divided into four sections.   *First*, we address why the Court should deny

24   the Motion and allow the current TRO to expire.   *Second*, and in the alternative, we discuss the

25   $5,000 bond proposed suggested by CoinLab and show why it is manifestly insufficient to

26   protect Tibanne if the TRO is entered.   *Third*, also in the alternative, we show that the Court

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER -6
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:467938.1

1    should permit Tibanne to sell domains to fund its business expenses despite any extension or

2    modification of the TRO.  *Fourth*, we show that, in all events, the Court should deny CoinLab's

3    request for attorney's fees.

4    **A.      THE MOTION SHOULD BE DENIED**

5           The Motion should be denied outright for at least three separate and independent reasons.

6    *First*, CoinLab is requesting something to which it simply has no right.  Both the United States

7    Supreme Court and Ninth Circuit Court of Appeals have made this point unmistakably clear:

8           *In Grupo Mexicano [de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S.
           308, 333 (1999)], the Supreme Court held that a district court does not have the
9          authority to issue a preliminary injunction preventing a party from disposing of
           assets pending adjudication of a claim for money damages.  The Court noted that
10         'before judgment (or its equivalent) an unsecured creditor has no rights at law or
           in equity in the property of his debtor.'  The Court held that a creditor with no
11         rights to the property of a debtor could not seek to restrain the debtor's use of its
           property.
12

13   *Dateline Exports, Inc. v. Basic Const., Inc.*, 306 F.3d 912, 914 (9th Cir. 2002).  Indeed, the Ninth

14   Circuit's holding in *Dateline Exports* mirrored that of the United States Supreme Court in *Grupo*

15   *Mexicano*.  The *Dateline Exports* court affirmed that the district court lacked the authority to

16   grant an injunction which, "if granted, would have permitted a creditor with no right to the

17   debtor's assets to interfere with the debtor's use of its own property." *Id.*

18          This case is no different.  CoinLab does not claim a right to any specific asset of Tibanne.

19   Rather, it claims that it needs the TRO "to prevent Tibanne from rendering itself judgment-

20   proof" in the event CoinLab prevails in this suit.  (*See* Docket No. 88, p. 2.)  Thus, *Dateline*

21   *Exports* is directly on point.  CoinLab is nothing more than an alleged "creditor with no right to

22   the debtor's assets" and, therefore, the Court should not allow CoinLab "to interfere with the

23   debtor's use of its own property." *Dateline Exports*, 306 F.3d at 914.

24          *Second*, the Motion makes no effort to satisfy any of the requirements for entry of a TRO.

25   It is well established that a TRO may be granted only "upon a clear showing" of each of the

26   following elements:   (1) a likelihood of success on the merits; (2) a likelihood of irreparable

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER -7
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:467938.1

1    harm in the absence of the TRO; (3) that the balance of equities tips in movant's favor; and

2    (4) that granting injunctive relief is in the public interest.  *Winter v. Nat'l Res. Def. Council, Inc.*,

3    555 U.S. 7, 24 (2008).

4        The Motion does not even acknowledge that this is the test for the entry of a TRO, much

5    less try to meet these elements.  Instead, the Motion goes on about Tibanne's failure to obtain

6    counsel and prior failure to provide the list of domain names required by the original TRO.  Yet,

7    the failure to obtain counsel was explained above, and has been cured.  Likewise, Tibanne has

8    now complied with the requirement of disclosing its domains to CoinLab's counsel.[3]  Thus,

9    those alleged violations do not provide a substitute route for CoinLab to obtain a TRO.  Rather,

10   even if CoinLab was otherwise possibly entitled to "interfere with [Tibanne's] use of its own

11   property" (it is not, Dateline Exports, 306 F.3d at 914), it has nevertheless completely failed to

12   meet its burden to satisfy the elements required for the entry of a TRO.

13       *Third*, "[t]he purpose of a TRO is 'preserving the status quo and preventing irreparable

14   harm just so long as is necessary to hold a hearing [on the preliminary injunction application],

15   and no longer.'"  *Gambill v. U.S. Bankr. Court--Tacoma*, C12-5608BHS, 2012 WL 2881897,

16   at *1 (W.D. Wash. July 13, 2012) (brackets in original) (quoting *Granny Goose Foods, Inc. v.

17   Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423 (1974), and citing *Reno Air Racing Ass'n

18   v. McCord*, 452 F.3d 1126, 1130-31 (9th Cir. 2006)).  Yet, here, CoinLab is not seeking a

19   preliminary injunction.[4]  Thus, its request for a TRO is fundamentally improper.

20                          *   *   *

21

22

23   _____
     [3] It should be noted that the list of domains is not relevant to the underlying issues in this case, but only to the TRO

24   itself.  Because the TRO should not be extended, the requirement of providing a list is essentially moot, in addition
     to being satisfied.

25   [4] CoinLab's claims that it plans to move to lift the stay and proceed with this litigation.  But, the Court properly
     stayed the action based on Mt. Gox's bankruptcy and CoinLab has advanced no reason why the Court should reverse

26   its prior order.

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER -8
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:467938.1

1  Based on the foregoing, CoinLab is not entitled to the requested TRO.  Accordingly, the

2  Court should deny the Motion and allow the current TRO to expire of its own accord.  If,

3  however, the Court were to grant the Motion and extend the TRO, the Court should nevertheless

4  enter an Order stating that Tibanne may sell domains, including, without limitation, bitcoins.com,

5  in order to finance its ongoing business operations.

6  **B.    ALTERNATIVELY, THE COURT SHOULD REQUIRE AT LEAST A $1**
**MILLION BOND**
7

8  Rule 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary

restraining order only if the movant gives security in an amount that the court considers proper to
9
pay the costs and damages sustained by any party found to have been wrongfully enjoined or
10
restrained."  Fed. R. Civ. P. 65(b).  Here, CoinLab is seeking to restrain Tibanne from engaging
11
in essentially any transactions with its assets.  As noted, this will leave Tibanne with essentially
12
no income and likely lead to bankruptcy – something CoinLab says it would welcome.
13

14  As security for this drastic measure, CoinLab proposes to provide only a nominal $5,000

15  bond.  The Motion makes no effort to justify this amount – nor could it.  This amount is clearly

insufficient to stand as security for the destruction of Tibanne's business.  Indeed, the sale of
16
bitcoins.com alone was expected to bring in approximately $750,000, not to mention its other
17
assets and ongoing business activities.  Accordingly, Tibanne respectfully suggest that, if the
18
TRO is allowed, then it not be entered until CoinLab post at least a $1 million bond.
19

20  **C.    ALSO ALTERNATIVELY, TIBANNE SHOULD BE GRANTED RELIEF FROM**
**THE TRO**

21  The current TRO expressly permits Tibanne to sell assets in order to fund its ordinary

22  operating expenses.  (*See* Docket No. 69, ¶ 1.1.)  The proposed new TRO maintains this

23  provision, but would require Court approval of any sale (or essentially any other business

24  activity).  (*See* Docket No. 88-1, ¶¶ 1-2.)  Regardless, the auction house that planned to conduct

25  the auction of bitcoins.com has not agreed to proceed with the auction based on the TRO as

26

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER -9
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:467938.1

1 currently written.  (Ex. 1, ¶ 11.)  Thus, if the TRO is extended in its original or proposed

2 modified form, then Tibanne would require a Court order to proceed with the sale of domains.

3         As set forth above, Tibanne's income is insufficient to pay its expenses.  By selling

4 domains – particularly bitcoins.com – Tibanne can generate income to use to pay its bills.

5 Accordingly, Tibanne seeks relief from the TRO, and any extension thereof, in the form of an

6 Order stating that Tibanne may sell bitcoins.com, or any other domains, despite the TRO so long

7 as the funds are used for ordinary business purposes.  Further, upon the sale of any domain

8 names, Tibanne will provide CoinLab with copies of the monthly accounting that it is currently

9 providing to the Mt. Gox Trustee, translated into English.

10 **D.      IN ALL EVENTS, ATTORNEY'S FEES SHOULD BE DENIED**

11         Finally, CoinLab requests that the Court order Tibanne to pay all of CoinLab's attorney's

12 fees incurred in connection with their TRO and the extensions thereof.  (*See* Docket 88, p. 6.)

13 CoinLab does not assert that it has any statutory or rule-based right to recover such fees.  Instead,

14 it cites – without any explanation or analysis – two cases dealing with when a Court can invoke

15 its inherent authority to award attorney's fees.  (*Id.* citing *In re DeVille*, 361 F.3d 539, 544-45

16 (9th Cir. 2004); *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732-33 (9th Cir.

17 1995).)

18         CoinLab has not met the very high standard for awarding attorney's fees under the

19 Court's inherent authority.  In fact, the Motion does not even try to meet the requisite "high

20 threshold" to show that Tibanne acted in "bad faith."  *Primus Auto. Fin. Servs., Inc. v. Batarse*,

21 115 F.3d 644, 648 (9th Cir. 1997).  Mere "ignorance or negligence" is not enough to justify the

22 sanction of attorney's fees under the Court's inherent authority.  *Barber v. Miller*, 146 F.3d 707,

23 711 (9th Cir. 1998).  Yet, as demonstrated above, that is the most that Tibanne was guilty of

24 here:  It misunderstood the Court's orders when it did not have counsel, and, once apprised of its

25 error, it acted promptly to come into compliance.  Accordingly, the requested sanction of

26 attorney's fees is not appropriate.

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER -10
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:467938.1

1                                           **IV.  CONCLUSION**

2          For the reasons stated above, Tibanne respectfully requests that the Court enter an Order:

3  (a) denying Plaintiff's Motion for Temporary Restraining Order in its entirety; (b) or, in the

4  alternative, requiring a bond of at least $1 million for the TRO and specifically providing in the

5  TRO that Tibanne may sell domains to fund its ordinary operating expenses; and (c) in all

6  events, denying CoinLab's request for attorney's fees.

7          DATED this 19th day of August, 2014.

8                                        MILLER NASH LLP

9                                        */s/ Lance D. Reich*

10                                       */s/ Kevin Regan*

11                                       Lance Reich, WSB No. 41090
                                      Kevin Regan, WSB No. 44565

12                                       MILLER NASH LLP
                                      601 Union Street, Suite 4400

13                                       Seattle, WA  98101
                                      Telephone:  (206) 622-8484

14                                       Fax:  (206) 622-7485
                                      E-mail: lance.reich@millernash.com

15                                       E-mail: kevin.regan@millernash.com
                                      Attorneys for Defendant Tibanne KK

16                                       Amanda Hinkley
                                      Richard G. Douglass

17                                       NOVACK AND MACEY LLP
                                      100 North Riverside Plaza

18                                       Chicago, IL  60606
                                      Telephone:  (312) 419-6900

19                                       Email:  ahinkley@novackmacey.com
                                      Email:  rdouglass@novackmacey.com

20                                       Admitted Pro Hac Vice
                                      Attorneys for Defendant Tibanne KK

21

22                                       Eric N. Macey
                                      NOVACK AND MACEY LLP

23                                       303 W. Madison St., Suite 1500
                                      Chicago, IL 60606-3308

24                                       Telephone: (312) 419-6900
                                      Email:  emacey@novackmacey.com

25                                       Admitted Pro Hac Vice
                                      Attorneys for Defendant Tibanne KK

26

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:467938.1

1

<u>CERTIFICATE OF SERVICE</u>

2  I hereby certify that I served the foregoing OPPOSITION TO MOTION FOR

3  TEMPORARY RESTRAINING ORDER on the following parties via CM/ECF system

4  transmission.

5  Under the laws of the state of Washington, the undersigned hereby declares, under the

6  penalty of perjury, that the foregoing statements are true and correct to the best of my

7  knowledge.

8  Executed at Seattle, Washington, this 19th day of August, 2014.

9

10  */s/ Lance D. Reich*
      Lance D. Reich

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE - 1
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:467938.1