1

Honorable Marsha J. Pechman

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

9

AT SEATTLE

10

COINLAB INC., a Delaware Corporation,

11

Plaintiff,

Case No. 2:13-cv-777-MJP

12

v.

**OPPOSITION TO MOTION FOR
RELIEF FROM STAY**

13

MT. GOX KK, a Japanese corporation, and
TIBANNE KK, a Japanese corporation,

14

Defendant.

15

16

Defendant Tibanne KK ("Tibanne"), by its attorneys, respectfully submits this

17

Opposition to Plaintiff CoinLab, Inc.'s ("CoinLab") Motion For Relief From Stay (the

18

"Motion").

19

I.    **INTRODUCTION**

20

21

This is like a bad re-run.  CoinLab's overheated rhetoric notwithstanding, nothing

22

material has changed since this Court entered its Order Staying The Action on April 30, 2014

23

(the "Stay"). (Dkt. 62.)  Moreover, CoinLab's Motion contains many of the same arguments that

24

this Court already rejected when it entered the Stay in the first place.  The rest of the Motion

25

argues over irrelevancies in an attempt to paint Tibanne in a negative light.  Boiled down to its

26

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

essence, the Motion is nothing more than CoinLab's effort to get the Court to dislike Tibanne so much that the Court reverses its earlier ruling.  That is not a proper basis to lift the Stay.  For this reason, and for the reasons set forth below, the Motion should be denied.

## II.     ARGUMENT

CoinLab claims that, since April, there has been a "'sea change'" with respect to the grounds on which the Court relied in entering the Stay.  This is completely untrue.  Indeed, CoinLab's Motion does not even address most of the grounds on which the Court relied in entering the Stay.  And, as for those it does address, its arguments are without merit.  These points are addressed in Section A below.  Further, CoinLab argues that Tibanne cannot satisfy the "unusual circumstances" test for granting a stay.  Yet, CoinLab made this same argument before and the Court held that this was the wrong legal standard.  We address this in Section B below.  Finally, CoinLab makes false and irrelevant accusations against Tibanne and Mark Karpeles in an attempt to prejudice the Court against Tibanne.  We debunk those in Section C below.

### A.  There Has Been No "Sea Change"

The Court entered the Stay based on six (6) central findings.  (Dkt. 62 at 3-4.)  Other than the fact that CoinLab now *claims* prejudice (but there is none), everything remains the same.

#### 1.  CoinLab's Claims Against Mt. Gox And Tibanne Are Identical

CoinLab does not (and could not) seriously contend that the nature of its claims against Tibanne and Mt. Gox have changed since the Stay was entered.  As the Court found, those claims were, and still are, identical.  (Dkt. 62 at 3.)  While CoinLab again tries to argue that the claims against Tibanne, as opposed to Mt. Gox, are the focus of this action (Dkt. 97 at 3-5), that

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER -2
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:468587.1

position cannot be squared with CoinLab's Complaint -- which mentions Tibanne only in the preamble and identification of parties -- or with the agreement that CoinLab alleges Tibanne and Mt. Gox breached.  This point was already addressed in detail in Mt. Gox's reply in support of its original motion to stay (*see* Dkt. 54 at 2), so we will not repeat it here.  Suffice it to say, the Court was right when it found that the claims are identical -- nothing has changed.

### 2.  Two Trials Would Be Duplicative

Because CoinLab's claims against Mt. Gox and Tibanne are identical, allowing separate trials on those claims would necessarily be duplicative.  This is simple logic.  Nevertheless, CoinLab argues that there would be no "duplicated trial" if its claims against Mt. Gox are tried in Japan.  At most, this point would bear on the amount of judicial resources that *this* Court would have to devote to the dispute.  We address that point below.  But, no matter where the two trials are held, they would still be duplicative.  Again, nothing has changed.

### 3.  Two Trials Could Create Inconsistent Obligations

Of course, holding two trials on the same claims poses the obvious risk of inconsistent results and, as the Court found, inconsistent obligations between the Defendants.  CoinLab's Motion does not address this finding, and the reason is obvious:  It has not changed.

### 4.  It Would Be Inefficient For This Court To Conduct Two Trials

As the Court found, "refusing to stay the action in its entirety will unnecessarily burden the docket as the Court will have to preside over two separate actions -- the first against Tibanne and the second against Mt. Gox when the automatic stay is lifted  -- as opposed to one." (Dkt. 62 at 3.)  This has not changed.  But, CoinLab argues, "the Japanese Bankruptcy *may* result in the *CoinLab v. MtGox* case being litigated in the Japanese bankruptcy court."  (Dkt. 97 at 3;

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:468587.1

1    emphasis added.)  Yet, CoinLab cites nothing in support of this speculation.  It does not claim

2    that it intends to try its claims against Mt. Gox in Japan.  It does not say it is, or will be, required

3    to do so.  It cites no legal authority for such a proposition.  In fact, CoinLab does not say that it

4    has done anything at all in Japan with respect to its claims against Mt. Gox since the Stay was

5    entered.  Again, nothing has changed.

6

7         Further, even if CoinLab's claims against Mt. Gox somehow are heard in Japan, there is

8    still the matter of Mt. Gox's Counterclaims for, among other things, restitution of amounts paid

9    to CoinLab by Mt. Gox under the subject agreement and, separately, to impose a constructive

10   trust due to "CoinLab's misrepresentation, conversion and wrongful retention of MtGox

11   customer funds in the amount of $5,315,210.79."  (Dkt. 18 at 20-21, ¶ 3(d).)  CoinLab itself

12   argues that claims that arise out of or are related to the underlying agreement -- like the

13   counterclaims -- are subject to "the exclusive forum selection clause in the agreement."  (Dkt. 97

14   at 3.)  Thus, according to CoinLab's position, even if CoinLab's claims against Mt. Gox are

15   ultimately tried in Japan, if the Stay is lifted now, there would still need to be two trials

16   conducted by this Court about the same series of events -- one involving Tibanne and the other

17   involving Mt. Gox's counterclaims.  The inefficiency that would be created by lifting the Stay as

18   to Tibanne is the same now as it was in April.

19

20         **5. A Single Trial Would Simplify The Issues, Proofs And Questions Of Law**

21         As found by the Court, holding one trial instead of two will simplify the proceedings.

22

23   CoinLab does not address or challenge this.  Thus, this finding remains the same.

24         **6. CoinLab Did Not Allege Prejudice Then, And Has None Now**

25         When CoinLab responded to Mt. Gox's motion to stay, it did not even try to argue that it

26

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER -4
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:468587.1

1    would be prejudiced by a stay of the entire action.  (*See* Dkt. 49 and Dkt. 62 at 3.)  Now, it

2    argues that it will be prejudiced "in light of Tibanne's admission that it is actively dissipating its

3    remaining assets."  (Dkt. 97 at 7.)   As an initial matter, Tibanne has not made any such

4    admission.  Rather, as set forth in the Declaration of Mark Karpeles, Tibanne is going through

5    tough financial times due to the hacking of the Mt. Gox exchange, and it needed to sell some

6    domain names "to raise the money needed to continue its operations for the remainder of the

7    year."  (Dkt. 90-1 at ¶ 14.)  And, contrary to CoinLab's implication, domain name sales have

8    always been part of Tibanne's business.  (*Id.* at ¶ 7.)  Indeed, elsewhere in the Motion, CoinLab

9    itself admits that the reason Tibanne needed to sell domain names was so that it could "maintain

10   operations" -- not liquidate.  (Dkt. 97 at 7.)  Thus, the supposed admission on which CoinLab's

11   argument rests simply does not exist.

12

13        Moreover, this potential "prejudice" is at best speculative.  It is based on CoinLab's

14   assertion that Tibanne will intentionally go out of business.  Yet, the only evidence CoinLab

15   cites in support of this is the fact that Tibanne has come on hard times and needed to sell domain

16   names -- an ordinary part of its business -- in order to make money to pay its ongoing business

17   expenses.  This does not support the contention that Tibanne is intentionally going out of

18   business.  To the contrary, it shows that Tibanne is trying to stay *in* business.  In fact, as CoinLab

19   itself points out, Tibanne recently launched a new web hosting service called forever.net to

20   expand its business.  (*Id.* at 6.)  If Tibanne were trying to make itself disappear, it would not be

21   launching new business ventures.  Thus, CoinLab's speculation is not only unsupported, it is

22   inconsistent with CoinLab's own evidence.

23

24

25                          *              *              *

26

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER -5
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:468587.1

1   Based on the foregoing, each of the grounds that led the Court to enter the Stay in the

2   first place remains the same.  Accordingly, the Motion should be denied.[1]

3   **B. CoinLab Again Tries To Apply The Wrong Legal Standard**

4   When Mt. Gox originally moved for the Stay, it did so pursuant to the Court's inherent

5   authority to control its own calendar and docket.  (*See* Dkt. 41 at 8-9.)  In opposition, CoinLab

6   asserted that the question should be decided under the more stringent "unusual circumstances"

7   test.  (Dkt. 49 at 3-5.)  Mt. Gox correctly pointed out that this was the wrong legal standard.

8   (Dkt. 54 at 6.)  The standard CoinLab relies on is used by bankruptcy courts for when they

9   should extend the automatic bankruptcy stay to non-debtor entities -- thereby deciding when to

10  control *other* Court's dockets.  (*Id.*)  The issue before this Court was how to control *its own*

11  docket.  And, the Court held that this question was to be resolved under the standards set forth in

12  cases such as *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir.

13  1983), *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979), and

14  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).  (Dkt. 62 at 3.)

15  In the current Motion, CoinLab repeats its mistake, arguing that Tibanne "can no longer

16  satisfy the 'unusual circumstances' required for extending the bankruptcy stay to a nondebtor."

17  (Dkt. 97 at 2.)  But now, as before, that is not the issue.  This Court is not considering whether to

18  extend the bankruptcy stay to Tibanne in all actions across the country.  The issue *sub judice* is

19  whether anything has happened in the last few months to change the Court's analysis of how it

---

[1]  CoinLab tries to make an argument based on the fact that, when the Stay was entered, Mark Karpeles was Mt. Gox's foreign representative in connection with the U.S. bankruptcy proceedings, and now, he is not.  CoinLab contends that, as a result, Mr. Karpeles now has time to devote to litigating this case.  Yet, the Court did not enter the Stay based on Mr. Karpeles's schedule.  Thus, this point is irrelevant.

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:468587.1

1    should manage its *own* docket.  As shown above, there has been no such change, so the Motion

2    should be denied.

3            In fact, CoinLab's reliance on the wrong legal standard here is very similar to CoinLab's

4    attempt to mislead the Court about the law on asset freeze orders.  It sought that order despite the

5    crystal clear authority providing that "'before judgment (or its equivalent) an unsecured creditor

6    has no rights at law or in equity in the property of his debtor'" and cannot obtain an asset freeze.

7

8    *Dateline Exports, Inc. v. Basic Const., Inc.*, 306 F.3d 912, 914 (9th Cir. 2002) (*quoting Grupo*

9    *Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999)).  CoinLab

10   wrongfully failed to inform the Court of this authority.  *Macon v. United Parcel Serv., Inc.*, C12-

11   260 RAJ, 2013 WL 951013, at *4 n.4 (W.D. Wash. Mar. 12, 2013) (emphasizing the parties'

12   "duty of candor to the tribunal" and quoting RPC 3.3(a)(2), which provides that "[a] lawyer shall

13   not knowingly . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction

14   known to the lawyer to be directly adverse to the position of the client and not disclosed by

15   opposing counsel.").  And, when Tibanne pointed it out, CoinLab unceremoniously folded its

16

17   tent and withdrew the motion.

18           Here, the error is even worse because the Court already rejected CoinLab's attempt to

19   apply the wrong legal standard.  CoinLab clearly tried to invoke the "unusual circumstances" test

20   back in April, and the Court just as clearly rejected it, specifically relying instead on

21   *Mediterranean, Leyva* and *Lockyer*.  (Dkt. 62 at 3.)  Yet, in this Motion asking the Court to

22   change its mind, CoinLab ignores entirely both *Leyva* and *Lockyer*, and mentions *Mediterranean*

23

24   only in passing.  (*See* Dkt. 97 at 12.)  In fact, its entire analysis of the issue under the correct

25   legal standard is its conclusory statement that the standard "does not apply here."  (*Id.*)  This falls

26

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER -7
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:468587.1

1    far short of providing any basis for why the Court should follow some other standard.

2        **C. CoinLab's Attempt To Smear Tibanne**

3        Finally, CoinLab asserts that "Mr. Karpeles and Tibanne should not be afforded

4    deference by the Court" because Mr. Karpeles is supposedly a bad guy.  (*Id.* at 3.)  Yet,

5    "deference" to Tibanne was not one of the factors that led the Court to enter the Stay in the first

6    place.  The actual grounds for the Court's ruling are addressed above, and they remain just as

7    compelling today as they were in April.

8

9        Moreover, it is completely inappropriate for a party to try to obtain relief from the Court

10   based on *ad hominem* attacks against the other party.  And, CoinLab's position makes no sense.

11   In sum, it is saying that Tibanne violated a Court order, but instead of CoinLab seeking sanctions

12   or asking the Court to hold Tibanne in contempt, it says the Court should lift the Stay.  Even if

13   Tibanne violated an order (it did not), the remedy for that would be contempt, not lifting a Stay

14   and forcing the Court and the parties to go through duplicative trials.

15

16       Additionally, CoinLab is just wrong when it claims Tibanne is in violation of any Court

17   order.  In particular, CoinLab cites three "facts" that is says demonstrate Tibanne's violation of

18   court orders.  *First*, it cites to Tibanne's failure to obtain counsel in this case.  But, Tibanne has

19   already explained -- and, importantly, apologized for -- that error.  Moreover, the error has since

20   been corrected.  And, the Court already considered whether to impose sanctions and declined to

21   do so.  This violation has, therefore, already been addressed.  CoinLab has no basis to bring it up

22   again in requesting the "sanction" of lifting the Stay.[2]

23

24

25   ――――――――――――――

26   [2]      In discussing this issue, CoinLab again misstates the record, claiming that Tibanne's
     "response" to learning that it was in violation of the Order was that it "did not read the order."
     (Dkt. 97 at 8.)  This is false.  Tibanne said that, without the benefit of counsel, it misunderstood

OPPOSITION TO MOTION FOR TEMPORARY
RESTRICTING ORDER -8
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

*Second*, CoinLab claims that Mr. Karpeles was "ordered to appear for deposition" by the Dallas Bankruptcy Court, "but never did so." (*Id.* at 9.)  There is no nice way to say this:  This statement is an attempt to mislead the Court.  The Bankruptcy Court ordered Mr. Karpeles to appear for a deposition when he was the foreign representative of Mt. Gox.  (*See* Order Granting, With Modifications, The Motion Of Creditors Gregory Greene And Joseph Lack For Order Compelling Deposition Testimony In The United States From The Foreign Representative, attached hereto as Exhibit A.)  Later, Mt. Gox moved for a continuance of the deposition, which was granted indefinitely.  (*See* Order Granting Continuance Of Deposition, attached hereto as Exhibit B.)  Then, Mr. Karpeles was replaced as the foreign representative of Mt. Gox.  (*See* Notice Pursuant To 11 U.S.C. § 1518 Of Change In Status Of Foreign Proceeding And Appointment Of Foreign Representative, attached hereto as Exhibit C.)  As a result, the deposition was never held.  So, while it is technically true that Mr. Karpeles never sat for a deposition, CoinLab's assertion that Mr. Karpeles "ignored orders of . . . the Dallas Bankruptcy Court" is simply false.

*Third*, CoinLab claims that Mr. Karpeles "lost, destroyed or misappropriated over $470 million worth of bitcoins and has yet to provide and explanation of these missing bitcoins." (Dkt. 97 at 3.)  This, too, is irrelevant and false.  For one thing, on its face this assertion has nothing to do with compliance with any court order; CoinLab is just summarizing *allegations* made against Mr. Karpeles in other, pending litigation, which Tibanne denies and which have nothing to do with this case.  Further, Mr. Karpeles *has* explained that the Mt. Gox exchange was

the two orders entered on the same day -- one saying to get counsel in 60 days and the other saying the entire case was stayed.  (Dkt. 90-1 at ¶¶ 3-4.)  Moreover, Tibanne's "response" to learning that it was in violation of the order was to immediately take steps to come into prompt compliance with the order and apologize to the Court.  (*Id.* at ¶ 12.)

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER -9
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:468587.1

hacked in February 2014 and *has* made efforts to respond to related concerns and criticisms. (*See*, *e.g.*, Dkt 90-1 at ¶¶ 5-6; Second Declaration of Mark Karpeles ("Karpeles Dec."), attached hereto as Exhibit D, at ¶ 11.)  Thus, CoinLab's assertions on this topic are also wrong.

*Fourth*, CoinLab argues that Tibanne might have violated the now-lapsed TRO.  In particular, the TRO required Tibanne to "notify Plaintiff's Counsel of all websites operated or controlled by Defendant Tibanne KK."  (Dkt. 69 at 5.)  Tibanne provided two such lists on August 19, 2014.  (*See* Declaration of Richard G. Douglass, a copy of which is attached hereto as Exhibit E, at ¶ 2.)  CoinLab agreed to maintain the first list as "Confidential" and the second as "Attorney's Eyes Only" pursuant to the Stipulated Protective Order entered in this case.  (*Id.* at ¶ 3.)

CoinLab's counsel never contacted Tibanne's counsel to raise any potential problems with those lists.  Nevertheless, in its Motion, CoinLab claims that the lists *might be* inaccurate. But, this is pure speculation.  For one thing, the lists *are* accurate.  (*See* Karpeles Dec. at ¶ 2.) Moreover, CoinLab's analysis is fundamentally flawed.  (*Id.* at ¶¶ 3-10.)  Among other things, the TRO required a list of "*websites*" that were "*owned or controlled*" by Tibanne -- not *domain names* and their *public registration* information.  So, CoinLab's analysis based on domain names is comparing apples to oranges.  While the *website* lists provided by Tibanne pursuant to the TRO do not match the CoinLab's lists of publicly-registered *domains*, there is no reason that they should.

Additionally, the materials CoinLab submitted with its Motion to support this contention are improper.  Indeed, the Declaration Of Christopher Koss In Support Of Motion To Lift Stay (the "Koss Declaration") lacks foundation, relies on inadmissible hearsay and fails to satisfy the

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101

SEADOCS:468587.1

1    requirements of Federal Rule of Evidence 1006.  *See Turner v. Calderon*, 281 F.3d 851, 877 (9th

2    Cir. 2002) (affirming that declarations relying on inadmissible hearsay and lacking foundation

3    are improper); *In re HWY Squared, Inc.*, 208 F. App'x 581, 583 (9th Cir. 2006) (affirming

4    exclusion of declaration, pursuant to Rule 1006, where the party preferring the declaration

5    "neither established that the records summarized in the [d]eclaration were voluminous nor made

6    those records available to [the opposing party]").

7

8          For instance, the Koss Declaration refers to searches performed and programs used by

9    CoinLab (*see*, *e.g.*, Dkt. 99 ¶¶ 4-5, 8), but it fails to establish Koss's personal knowledge as to

10   how CoinLab performed its searches or used particular programs.   Moreover, the Koss

11   Declaration relies on information from websites (such as robowhois.com) (*id.* at ¶ 8), but

12   provides no basis for the reliability of such third-party information and no explanation for why

13   the Court should consider such obvious hearsay to be admissible.  Further, although the Koss

14   Declaration summarizes a great deal of information and is an apparent attempt to take advantage

15   of Rule 1006, it flatly fails, as required, to establish that the records summarized therein were

16   voluminous or were made available to Tibanne for examination and/or copying.

17

18         And to make matters even worse, when CoinLab initially filed the Koss Declaration, it

19   included (inaccurate) descriptions of the contents of the website list that CoinLab agreed to treat

20   as Confidential.  This constituted a violation of its agreement and the Stipulated Protective

21   Order.  So, in making its argument that Tibanne *might* have violated a Court order, CoinLab *did*

22   violate a Court order.[3]

23

24   _____

25   [3]    The parties agreed to promptly file a stipulated motion to place the confidential
     information under seal and provide the Court with a redacted version of the improper
26   declaration.

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER -11
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:468587.1

1   In all events, CoinLab is loudly complaining about possible non-compliance with part of

2   an asset freeze order that it should never have requested in the first place, and which has since

3   expired.  That said, Tibanne respects this Court and fully complied with the TRO.  (Karpeles

4   Dec. at ¶ 2.)  And, if CoinLab had serious concerns and was trying to obtain compliance, one

5   would think that it would have contacted Tibanne's counsel.  But, it never did.  Rather, CoinLab

6   appears to have conducted its analysis solely for the purpose of using it as ammunition to smear

7   Tibanne in papers filed with the Court.  To that extent, CoinLab is just gaming the system.

8   Regardless, this hypothetical non-compliance with the TRO does not support lifting the Stay and

9   proceeding with duplicative trials.

10

11   **III.     CONCLUSION**

12          In sum, CoinLab has identified nothing that has changed since the Court entered the Stay

13   on April 30.  Instead, the Motion is based on multiple misstatements, counsel's hyperbolic

14   rhetoric and clearly inapplicable legal authority.  Accordingly, and for the reasons stated above,

15   Tibanne respectfully requests that the Court enter an Order denying Plaintiff's Motion For Relief

16   From Stay in its entirety.

17

18

19

20

21

22

23

24

25

26

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:468587.1

1

DATED this 19th day of August, 2014.

2

MILLER NASH LLP

3

4   /s/ Lance D. Reich

    /s/ Kevin Regan

5   Lance Reich, WSB No. 41090
    Kevin Regan, WSB No. 44565

6   MILLER NASH LLP
    601 Union Street, Suite 4400

7   Seattle, WA  98101
    Telephone:  (206) 622-8484

8   Fax:  (206) 622-7485
    E-mail: lance.reich@millernash.com

9   E-mail: kevin.regan@millernash.com
    Attorneys for Defendant Tibanne KK

10

    Amanda Hinkley

11  Richard G. Douglass
    NOVACK AND MACEY LLP

12  100 North Riverside Plaza
    Chicago, IL  60606

13  Telephone:  (312) 419-6900
    Email:  ahinkley@novackmacey.com

14  Email:  rdouglass@novackmacey.com
    Admitted Pro Hac Vice

15  Attorneys for Defendant Tibanne KK

16  Eric N. Macey
    NOVACK AND MACEY LLP

17  303 W. Madison St., Suite 1500
    Chicago, IL 60606-3308

18  Telephone: (312) 419-6900
    Email:  emacey@novackmacey.com

19  Admitted Pro Hac Vice
    Attorneys for Defendant Tibanne KK

20

21

22

23

24

25

26

OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER -13
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:468587.1

1          CERTIFICATE OF SERVICE

2          I hereby certify that I served the foregoing OPPOSITION TO MOTION FOR RELIEF

3   FROM STAY on the following parties via CM/ECF system transmission.

4          Under the laws of the state of Washington, the undersigned hereby declares, under the

5   penalty of perjury, that the foregoing statements are true and correct to the best of my

6   knowledge.

7          Executed at Seattle, Washington, this 15th day of September, 2014.

8

9                              /s/ Lance D. Reich
                               Lance D. Reich
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE - 1
(Case No. 2:13-cv-777-MJP)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:468587.1